UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER HOWARD GOLDEN,

                Plaintiff,

         -v-                                        15-CV-385(RJA)(HBS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

---

## REPORT AND RECOMMENDATION

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 14 (Plaintiff), 20 (defendant Commissioner)).

## INTRODUCTION

Plaintiff Christopher Howard Golden ("Plaintiff"), who is represented by counsel, brought this action pursuant to 42 U.S.C. § 405(g) to reverse the final decision of Defendant, the Commissioner of Social Security ("Commissioner" or "Defendant"), that Plaintiff is not disabled and, therefore, not entitled to Supplemental Security Income ("SSI") payments and Disability Insurance Benefits ("DIB") under the Social Security Act. Defendant filed a motion for judgment affirming the final decision.

## PROCEDURAL HISTORY

Plaintiff protectively filed applications for SSI and DIB on January 18, 2013, alleging disability beginning December 24, 2011, due to back deformity, low back pain, neurogenic bladder, permanent colostomy, imperforate anus, asthma, allergies, seizure disorder, osteopenia, learning disability, sciatica, and herniated discs (R. 12, 104-117, 174).[1] The applications were initially denied, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 49-50, 57-64, 68-76). On October 18, 2013, Plaintiff appeared with an attorney and testified before ALJ Mark Solomon by videoconference  (R. 25-48). Pat Green, an impartial vocational expert ("VE Green"), also appeared and testified (R. 42-48). On December 3, 2013, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Social Security Act (R. 9-24). The Appeals Council denied Plaintiff's request for review on March 13, 2015, making the ALJ's disability determination the final decision of the Commissioner (R. 1-5). This action followed, and the parties now cross-move for judgment on the pleadings (Docket Nos. 14, 20).

## FACTUAL BACKGROUND

Plaintiff, who was 37 years-old on his alleged disability onset date of December 24, 2011, is a high school graduate with two years of college education (R. 18, 175).  Prior to the alleged onset of disability, Plaintiff worked as a packer for an ice cream manufacturer and a furniture company (R. 30-32).  He had not worked since 2011 (R. 30).

Plaintiff testified that he had problems with his colostomy bag leaking during work, and that he also suffered from asthma, allergies, back pain, and seizure disorder (R. 31-34).

---

[1] Citations to  "(R.__)" refer to the certified record of the administrative proceedings.

Plaintiff told the ALJ that he was able to take care of his own personal needs, but that he only does a little bit of the household chores due to his back (R. 36). He stated that he took prescription medications which caused him to become drowsy and dizzy (R. 36-37). During a typical day, Plaintiff would watch television, read on his back, and go grocery shopping once per week with his mother (R. 37). He stated that he had back pain that never went away, even with medication (R. 37). Plaintiff could sit for about 20 to 30 minutes at a time before having to move, and that he could stand about 10 to 15 minutes before the pain in his back radiated down his right leg (R. 37-38). He also had trouble sleeping due to asthma, allergies, and the need to go to the restroom two or three times nightly (R. 38).

Plaintiff testified that he had a colostomy bag due to a birth defect, which he had to attend to about four times per day, for ten to 30 minutes at a time (R. 39). The bag would come loose and leak with increased movement (R. 39-40).

***Medical and Vocational Evidence***

On November 9, 2010, a lumbar spine MRI study showed probable congenital abnormalities contributed to configuration and alignment within the mid-lumbar spine, including a butterfly type vertebrae body and anterior ankyloses, and tight foraminal narrowing with probable nerve root impingement on the right at L5-Sl (R. 279-81).

Plaintiff participated in physical therapy from January through February, 2011, at Westfield Memorial Hospital for sciatica and lower back pain (R. 253-60). The discharge summary indicated that Plaintiff had mostly achieved the treatment objective, and exhibited good strength in lower extremities and full range of motion throughout. The summary notes suggested that persistent radicular symptoms may be related to permanent colostomy (R. 254).

Mohamed Kourtu, M.D., from The Chautauqua Pain Institute, started treating Plaintiff in March, 2011, for lower back pain radiating down the right leg. Plaintiff rated the pain as 4/10 in severity that was aggravated with walking and relieved with rest. He indicated that the physical therapy did not improve his symptoms and that he managed his pain with Tylenol. There was no noted limitation in movement and no epidural steroid injection was administered at that time (R. 282).

Plaintiff underwent a series of epidural injections at L3 through Sl levels in March and October, 2011, and again in April, 2012 (R. 286, 290, 296). In June, 2012, Plaintiff underwent trigger point injections over the right lumbar paraspinal musculature (R. 300).

In July, 2012, Dr. Kourtu, indicated that the combination of the epidural steroid injections, facet joint block and trigger point injections helped Plaintiff's pain with significant improvement (R. 304).

In October, 2012, and January, 2013, Plaintiff continued to complain of persistent lumbar pain. Dr. Kourtu diagnosed Plaintiff with myofascial pain syndrome, and administered trigger point injections (R. 334-35).

On March 6, 2013, Samuel Balderman, M.D., conducted a consultative physical examination of Plaintiff, who reported no musculoskeletal difficulties (R. 376-79). He exhibited normal gait and was able to walk on heels and toes, and used no assistive devices for ambulation. Plaintiff was able to change for the examination, rise from his chair, and get on and off the examination table without assistance (R. 377). Plaintiff had full range of motion and strength throughout (R. 378). Cervical spine examination showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. Plaintiff had no scoliosis, kyphosis, or abnormality in the thoracic spine. His lumbar spine showed flexion to 90 degrees and full lateral

and rotary movements. Straight leg testing was negative bilaterally. Plaintiff had full range of motion of the shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. His joints were stable and non-tender, with no redness, heat, swelling, or effusion. There were no neurological deficits. The examination of the abdomen showed normal bowel sounds and no abdominal bruits. The chest and lung examination was within normal limits. Dr. Balderman diagnosed a seizure disorder, asthma, and permanent colostomy. The consultative physician opined that Plaintiff had mild limitations in repetitive bending and lifting due to the presence of the colostomy, but noted no other functional limitations (R. 378).

On May 16, 2013, Gary Eggleston, M.D., conducted a routine physical examination of Plaintiff, who reported occasional asthma flare-ups, and that he was unable to return to work due to ongoing issues with chronic back pain (R. 388-91). He continued to take anti-seizure medications, although he had not had any seizures in many years. Plaintiff did not report any particular problems or limitations due to colostomy, and stated that it was not leaking as much since he was no longer working (R. 388). Plaintiff's physical examination was within normal limits (R. 390). He walked with a normal gait, and his posture and spinal contour were normal. Plaintiff's motor strength in both the upper and lower extremities was also intact (R. 390). Dr. Eggleston diagnosed Plaintiff with congenital abnormalities of the lumbar spine (R. 391).

A treatment note by Dr. Kourtu, on August 21, 2013, indicated that in addition to medication management, Plaintiff underwent right lumbar L3-4, L4-5 and L5-Sl median branch block series injections (R. 396).

During the administrative hearing the ALJ asked the vocational expert whether a person could perform Plaintiff's past work with an RFC of light work with additional limitations (R. 43-44). VE Green testified that such a person could not perform Plaintiff's past relevant work as a

hand packer (medium work, unskilled), but could perform other jobs in the national economy

such as small products assembler, ticket seller, and garment sorter (R. 43-45).  A further

hypothetical restricted such an individual to sedentary work with the same non-exertional

limitations, to which she found three sedentary jobs (R. 46-47). The ALJ posed a final

hypothetical to VE Green involving the inability to maintain a regular schedule because of the

frequent need to change his colostomy bag, which could not be accommodated by regularly-

scheduled work breaks (R. 47). She responded that such an individual would not be able to

perform any work (R. 48.)

Based on "the conservative treatment history, essentially normal physical and diagnostic

examination findings, the opinions of the examining physicians, as well as claimant's own

testimony regarding his full activities of daily living," the ALJ concluded that Plaintiff retained

the residual functional capacity ("RFC") to perform light work with the limitations of sitting for

six hours, standing or walking for six hours; avoiding climbing ropes, ladders, and scaffolds;

only occasionally climbing ramps and stairs; occasionally stooping; and avoiding exposure to

respiratory irritants, unprotected heights, and working with hazardous machinery (R. 15, 18).

The ALJ further found that Plaintiff's testimony was only partially credible, and determined that

Plaintiff was not disabled under the Social Security Act (R. 16-20).


**DISCUSSION**

*Legal Standards*

Under the Social Security Act, "disability" is defined in essentially the same way for DIB

and SSI programs. See 42 U.S.C. §§ 423(d),  1382c(a)(3). An individual is defined as disabled

when she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," and "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(1) (a), 1382c(a)(3)(A); 42 U.S.C. §§ 423(d)(2)(A), 1382c(a) (3)(B).

Such a disability will be found to exist only if an individual's physical or mental impairment or impairments are of such severity that he or she is not only unable to do [his or her] previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).  An impairment is severe if it "significantly limits the claimant's ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Plaintiff bears the initial burden of showing that an impairment prevents him or her from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, the burden shifts to the Commissioner to prove the existence of alternative substantial gainful work that exists in the national economy and which the Plaintiff could perform. Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In evaluating disability claims, an ALJ must employ a five-step inquiry: (1) whether the Plaintiff is currently working; (2) whether the Plaintiff suffers from a severe impairment; (3) whether the impairment is listed in Appendix 1 of the relevant regulations; (4) whether the impairment prevents the Plaintiff from continuing her past relevant work; and (5) whether the

impairment prevents the Plaintiff from doing any kind of work. 20 C.F.R. §§ 404.1520 &
416.920; Berry , 675 F.2d at 467. If a Plaintiff is found to be either disabled or not disabled at
any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) &
416.920(a).

    In order to determine whether an admitted impairment prevents a claimant from
performing his or her past work, the ALJ is required to review the Plaintiff's residual functional
capacity ("RFC") and the physical and mental demands of the work he or she has done in the
past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's
ability to return to his or her past relevant work given his or her RFC.  Washington, 37 F.3d at
1442.

    With respect to this Court's review of the Commissioner's final decision, it is "limited to
determining whether the ALJ's conclusions were supported by substantial evidence in the record
and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir.
2012) (internal quotation marks omitted); see also 42 U.S.C. § 405(g). The Social Security Act
holds that a decision by the Commissioner is "conclusive" if it is supported by substantial
evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means
such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). It is not
this Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel,
134 F.3d 496, 501 (2d Cir. 1998) (internal quotation marks omitted).

***RFC Assessment***

Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because he did not properly consider the limitations imposed by Plaintiff's colostomy and lumbar issues (Docket No. 14-1 at 3-4).

The ALJ has the responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a), 404.1546(c). The RFC is a determination as to how a claimant's impairments and related symptoms affect what he can do in a work setting. See 20 C.F.R. §§ 404.1545(a)(1), 404.1569a. In determining a claimant's RFC, the ALJ must weigh the record evidence and resolve any conflicts that exist. See Matta v. Astrue, 508 Fed.Appx. 53, 56 (2d Cir. 2013); Veino v. Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.")

With regard to Plaintiff's colostomy, the ALJ noted that there was "no evidence in the record of any limitations due to colostomy, other than, as stated by the consultative examiner, mild limitations for bending," and further noted that an activities of daily living report indicated no limitations whatsoever attributed to colostomy (R. 16). The ALJ contrasted this with Plaintiff's testimony that he was required to use the restroom four or five times per day in order to empty the bag, as well as his complaints of problems with the bag leaking approximately one or two times per month, requiring replacement (R. 16).

Because there were no colostomy-based limitations indicated by the activities of daily living form or the objective medical evidence, the ALJ properly observed the evidence of record and considered the conflicting evidence against Plaintiff's subjective complaints. Cf. Cline v. Comm'r, 96 F.3d 146, 150 (6th Cir. 1996) (discounting claimant's testimony about difficulties

with a colostomy in the absence of supporting evidence in the record).  While Plaintiff relies upon his hearing testimony that "moving around compromises the integrity of the bag and causes leaks," (Docket No. 14-1 at 3) he points to no objective medical evidence in the record to support his subjective complaints. It is well-settled that it is the ALJ's role to evaluate a claimant's credibility and to decide whether to discredit a claimant's subjective estimate of the degree of his impairment. Tejada v. Apfel, 167 F.3d 770, 775–76 (2d Cir. 1999). See also 20 C.F.R. § 416.929(b) (dictating than an individual's subjective complaints alone do not constitute conclusive evidence of a disability). It was therefore within the ALJ's discretion to "weigh[ ] the credibility of the claimant's testimony in light of the other evidence in the record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010).[2]

In reaching the RFC determination, the ALJ also considered a May, 2013, physical examination indicating that Plaintiff did not report any particular problems or limitations due to colostomy, as well as the consultative examiner's opinion that Plaintiff had mild limitations in bending and lifting attributable to colostomy (R. 17-18). The ALJ noted that there was no treating source opinion provided by Plaintiff or his attorney, and that he relied upon Plaintiff's treatment history, examination findings and physician notes, and Plaintiff's hearing testimony in determining the RFC (R. 18). Based on the evidence available to him in the record, it cannot be said that the ALJ did not account for Plaintiff's colostomy impairment. To the contrary, the ALJ's relegation of Plaintiff to "light work" with additional limitations accounted for Plaintiff's colostomy and was consistent with the Medical Source Statement of Dr. Balderman that Plaintiff had mild limitations in repetitive bending and lifting.  See Richardson v. Colvin, No. 15-CV-6276, 2016 WL 3179902, at *8 (W.D.N.Y. June 8, 2016) (noting that "[m]any courts have held that such mild or even moderate limitations are consistent with the ability to perform the full

---

[2] Plaintiff does not specifically challenge the ALJ's credibility determination in his motion.

range of light work."); see also Gurney v. Colvin, No. 14-CV-688, 2016 WL 805405, at *3

(W.D.N.Y. Mar. 2, 2016) ("Indeed, moderate limitations [on "repetitive heavy lifting, bending,

reaching, pushing, pulling, or carrying"] . . . . are frequently found to be consistent with an RFC

for a full range of light work."). The RFC relative to Plaintiff's colostomy condition was

therefore supported by substantial evidence in the record.

Plaintiff also argues that the ALJ's characterization of Plaintiff's back pain as controlled

by medication and epidural injections "utterly underrepresents the amount of treatment that

Plaintiff underwent," and that the RFC finding did not properly take into account Plaintiff's

severe pain due to his lumbar abnormalities (Docket No. 14-1 at 4).

Here, the ALJ found that "as the claimant is being treated for a back condition, I find that

he does have some limitations for prolonged walking, standing, and sitting, as well as postural

limitations." (R. 18). The ALJ assessed these limitations despite the absence of a diagnosis of

back impairment by Dr. Balderman, who provided the sole functional assessment in the record.

Significantly, Plaintiff did not raise the issue of his back pain during the consultative

examination. In addition, Plaintiff's musculoskeletal examination revealed normal gait, ability to

walk on heels and toes, no assistive devices used, and full range of motion and strength

throughout the spine (R. 18, 378). The ALJ further noted that a routine physical examination in

May, 2013, by Plaintiff's treating physician was within normal limits (R. 17, 390). The evidence

of record therefore supports a restricted range of light work and the ALJ did indeed explicitly

account for Plaintiff's lumbar condition in the assessed RFC. Plaintiff again fails to present

objective medical evidence—outside of his own subjective complaints—to support a more

restrictive RFC.

With regard to Plaintiff's claim that the ALJ mischaracterized the evidence insofar as he found that Plaintiff suffered from "occasional back pain . . . . apparently controlled with medications and epidural injections," the ALJ did not unreasonably minimize Plaintiff's back pain (Docket No. 14-1, citing R. 16)

"In evaluating the record, the ALJ may not ignore or mischaracterize evidence of a person's alleged disability." Brennan v. Colvin, No. 13-CV-6338, 2015 WL 1402204, at *16 (S.D.N.Y. Mar. 25, 2015). It is incumbent upon the ALJ to discuss the "the crucial factors in any determination ... with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

The ALJ noted Plaintiff's treatment notes from July, 2012, indicating that Plaintiff's pain was "significantly better," and his chief complaint at that time was "sleepiness from the medication . . . ." (R. 17, 304).  He further noted Plaintiff's MRI study, which revealed probable congenital abnormalities, a January, 2013, diagnosis of myofascial pain syndrome, and conservative treatment regimen of epidural steroids and trigger-point injections (R. 16-17). A May, 2013 physical examination was within normal limits and likewise, the consultative examination in March, 2013, did not reveal any limitations arising from Plaintiff's back pain (R. 17).  In light of all of the above-discussed evidence, the ALJ concluded that, despite the consultative examiner's finding of no postural limitations, Plaintiff's RFC would be reduced to limit prolonged walking, standing, and sitting, therefore properly considering the nature, extent, and limiting effect of Plaintiff's pain (R. 18).

The Court is cognizant that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work

without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas, 712 F.2d at 1552. The ALJ here properly exercised his discretion to evaluate the credibility of Plaintiff's testimony, applied the correct legal standards in reviewing Plaintiff's complaints of pain, and formulated the RFC with the support of substantial evidence in the record.[3]

## CONCLUSION

For the foregoing reasons, the Court recommends that the decision of the Commissioner's motion for judgment on the pleadings (Docket No. 20) be granted, and that the Plaintiff's motion (Docket No. 14) for similar relief be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and Loc. R. Civ. P. 72(b).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME

---

[3] To the extent Plaintiff seeks to argue that the ALJ was required to explain why he rejected the VE's response to the final hypothetical that an individual requiring additional work breaks to frequently change the colostomy bag (Docket No. 14-1 at 3-4), the ALJ was not obligated to rely on a response to a hypothetical question that was premised upon limitations rejected by the ALJ. See Priel v. Astrue, 453 Fed. Appx. 84, 87–88 (2d Cir. 2011) ("In determining [Plaintiff's] RFC, the ALJ properly evaluated the entirety of the record . . . . At the same time, the ALJ properly declined to include in his hypothetical question symptoms and limitations that he had reasonably rejected.") (citing Dumas, 712 F.2d at 1554).

WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER

ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S.

140 (1985); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd.,

838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case

law and/or evidentiary material which could have been, but was not, presented to the Magistrate

Judge in the first instance. See Patterson-Leitch Co. Inc. v. Mass. Mun.Wholesale Elec. Co., 840

F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to Loc. R. Civ. P. 72(b), "Written

objections to proposed findings of fact and recommendations for disposition submitted by a

Magistrate Judge . . . shall specifically identify the portions of the proposed findings and

recommendations to which objection is made and the basis for each objection, and shall be

supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in

the District Court's refusal to consider the objection.

SO ORDERED.

/s Hugh B. Scott           .
United States Magistrate Judge
Western District of New York

Dated: November 8, 2016
       Buffalo, New York