UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHRISTOPHER HOWARD GOLDEN,

      Plaintiff,

  -vs-

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

**15-CV-385
DECISION AND
ORDER**

---

**I.  Introduction**

Plaintiff Christopher Howard Golden ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), claiming that the Commissioner of Social Security ("Commissioner" or "defendant"), improperly denied his applications for supplemental security income ("SSI") payments and disability insurance benefits ("DIB") under the Social Security Act ("SSA").  Currently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

On November 8, 2016, Magistrate Judge Hugh B. Scott issued a Report and Recommendation ("R&R") (Docket No. 21), with which the parties' familiarity is assumed, recommending that defendant's motion be granted and plaintiff's motion be denied.  As discussed further below, the Court agrees with Judge Scott's findings and adopts the Report and Recommendation in its entirety.

**II.  Discussion**

When specific objections are made to a magistrate judge's report and recommendation, the district judge makes a "de novo

determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). When only general objections are made to a magistrate judge's report and recommendation, the district judge reviews it for clear error or manifest injustice. *E.g., Brown v. Peters*, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997), *aff'd*, 175 F.3d 1007 (2d Cir. 1999). After conducing the appropriate review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Plaintiff's applications for SSI and DIB, initially denied, were filed on January 18, 2013 and alleged disability beginning on December 24, 2011 based on his back deformity, low back pain, neurogenic bladder, permanent colostomy, imperforate anus, asthma, allergies, seizure disorder, osteopenia, learning disability, sciatica, and herniated discs. Administrative Transcript (hereinafter "T.") 12, 104-117, 174. Following a hearing before an administrative law judge ("ALJ"), during which testimony was taken from plaintiff and a vocational expert ("VE"), the ALJ issued an unfavorable finding that plaintiff was not disabled under the SSA.

In his decision, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitation: sit for six hours and stand or walk for a total of six hours; avoid climbing ropes, ladders, and scaffolds; only occasionally climb ramps and stairs; occasionally stoop; and

avoid exposure to respiratory irritants; and avoid working from unprotected heights and with hazardous machinery.  On March 13, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  The present action ensued.

In his response to the R&R, plaintiff raises two specific objections.  Plaintiff first contends that Judge Scott improperly relies on the erroneous finding of the ALJ that there is no evidence in the record of any limitation due to his colostomy, apart from a mild limitation for bending.  Plaintiff points out that the objective medical evidence in the record includes two reports by Dr. Gary Eggleston that reference leakage of his colostomy.  Plaintiff argues, therefore, that this evidence requires a hypothetical question posed to the VE that includes a limitation for plaintiff's need to change his colostomy bag at work.

Plaintiff's second objection asserts that Judge Scott improperly relied on the ALJ's characterization that his back pain was controlled by medication and injections, and that this finding ignores the record evidence of his many injections and his multiple diagnoses of spondylosis, intervertebral disc displacement, and radiculitis by the Warren Pain Clinic.  As a related matter, plaintiff also contends that treatment notes from the Warren Pain Clinic added to the record after the ALJ rendered his decision supports an RFC determination of no more than sedentary work.

Upon its *de novo* review of the R&R and after careful consideration of plaintiff's objections, the Court accepts

Judge Scott's proposed findings and recommendation. With respect to plaintiff's objection concerning the leaking of his colostomy, Dr. Eggleston's February 2012 report states that he was experiencing "ongoing issues with his colostomy leaking - problem at previous jobs he has had." T. 265. However, Dr. Eggleston does not include this issue as a limitation on plaintiff's work activities. In his May 2012 treatment note, Dr. Eggleston stated that plaintiff "still has issues with some leaking around his colostomy which has been frustrating for" plaintiff T. 346. Neither report indicates the frequency with which the leaking had occurred nor the duration of these occurrences. During the physical examination, the doctor observed that "some stool ha[d] leaked out onto the strap that holds [plaintiff's colostomy] in place." T. 348. In May 2013, plaintiff reported that since he had stopped working, his colostomy was "not leaking nearly as much stool around the stoma site as [it] used to." T. 388. At the hearing, plaintiff testified that he was fired from a manual labor position with his long-time employer, Fieldwork Foods, due to his attendance issues, which were related to his colostomy bag leaking, his asthma and allergies, and his back problems. T. 32-33. This full-time job required him to stand continuously and repetitively lift and carry 40-pound packages of ice cream. When asked whether the leakage issue had been resolved, plaintiff responded: "I still have the problem. Stayed about the same." T. 33. When asked how often the bag leaked, plaintiff responded: "I'd say about two times a month. That's when I had the really bad problems." T. 33.

Contrary to plaintiff's contention, the R&R reveals that Judge Scott properly reviewed and considered all of the medical evidence concerning plaintiff's colostomy, including the reports specifically referenced by plaintiff in his Objections, before affirming the ALJ's decision. Judge Scott found that:

> "[b]ased on the evidence available to him in the record, it cannot be said that the ALJ did not account for Plaintiff's colostomy impairment. To the contrary, the ALJ's relegation of Plaintiff to "light work" with additional limitations accounted for Plaintiff's colostomy and was consistent with the Medical Source Statement of Dr. Balderman that Plaintiff had mild limitations in repetitive bending and lifting."

R&R, p. 10. Judge Scott further noted that courts have held that mild to moderate limitations in repetitive lifting and bending are consistent with the ability to perform the full range of light work. With respect to plaintiff's subjective complaints concerning the frequency and duration of bathroom breaks needed to empty his colostomy bag, Judge Scott found that "because there were no colostomy-based limitations indicated by the activities of daily living form or the objective medical evidence, the ALJ properly observed the evidence of record and considered the conflicting evidence against Plaintiff's subjective complaints." T. 9. This Court finds that there is substantial evidence in the record to support this finding, as well as the ALJ's determination.

With respect to plaintiff's objection concerning the additional medical evidence related to his back condition and treatment, the Court notes that his objection is essentially a reiteration of the same contention made in plaintiff's motion for

-5-

judgment on the pleadings, wherein he argues that the ALJ mistakenly characterized his back pain as being controlled by medication and epidural injections. The Court also notes that the Appeals Council found that the treatment notes from the Warren Pain Clinic and Acupuncture Center, dated October 3, 2013, which were supplied by plaintiff's representative, did not provide a basis for altering the ALJ's decision. The notes from this office visit reveal that plaintiff had five injections over a three-year period, and that the status of his condition and pain was substantially unchanged since his last visit. He reported that, post injection, he is pain free "for a little while" and that his pain "is better" when he uses pain medication. T. 401. The physical examination of plaintiff's spine revealed: left rotation with difficulty; pain in the right lower back, left lower back, and right lower extremity; right rotation with discomfort; pain in the righter lower back, left lower back, and right lower extremity; and extension with pain in the right lower back, left lower back, and right lower extremity. T. 401. Plaintiff indicated that he wanted to "discuss other options," and a follow-up appointment in one month was recommended.

The Court agrees with the Appeals Council that this record does not contain any evidence to warrant remanding the case to the ALJ. The Court has reviewed plaintiff's contention and agrees with Judge Scott's finding that the evidence in the record supports a restricted range of light work and that the ALJ explicitly accounted for plaintiff's lumbar condition in his RFC assessment by

including postural limitations and restrictions on prolonged walking, standing, and sitting. The Court therefore adopts Judge Scott's analysis in its entirety.

**III. Conclusion**

For the reasons set forth in Judge Scott's thorough and well-reasoned Report and Recommendation, the undersigned adopts all of his conclusions. The Report and Recommendation (Docket No. 21) is hereby adopted in its entirety. The Commissioner's motion for a judgment on the pleadings (Docket No. 20) is granted, and plaintiff's motion for a judgment on the pleadings is denied (Docket No. 14). The Clerk of Court is requested to close this case.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
MICHAEL A. TELESCA
United States District Judge

Dated: February 10, 2017
       Rochester, New York